UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
G&G CLOSED CIRCUIT EVENTS, LLC,

       Plaintiff,      REPORT & RECOMMENDATION

 -against-

                No. 20-CV-04280-KAM-JRC

AYAZ HUSSAIN, individually and d/b/a HOOKAH ON THE BAY; and GHAZI NY INC., an unknown business entity d/b/a HOOKAH ON THE BAY,

       Defendants.

------------------------------------------------------------------- x

JAMES R. CHO, United States Magistrate Judge:

  Plaintiff G&G Closed Circuit Events, LLC ("plaintiff" or "G&G") brings this action against Ghazi NY Inc., an unknown business entity doing business as Hookah on the Bay[1] ("defendant" or "Ghazi NY Inc."), alleging that the defendant, in violation of the Federal Communications Act of 1934 ("FCA"), 47 U.S.C. §§ 553 and 605, unlawfully intercepted and displayed a boxing match held on September 16, 2017, between Saul Alvarez and Gennady Golovkin. *See* Compl. ¶¶ 1, 12, 17, 24, Dkt. 1. Upon plaintiff's application and in light of defendant's failure to appear in or otherwise defend this action, the Clerk of the Court entered defendant's default on April 27, 2021. Dkt. 16. Plaintiff now moves for default judgment and seeks statutory damages. *See generally* Mot. for Default J., Dkt. 17; Plaintiff's Mem. in Support of App. for Default J. ("Pl.'s Mem."), Dkt. 17-1.[2] Currently pending before this Court, on a

---

[1] On March 30, 2021, plaintiff voluntarily dismissed its claims against Ayaz Hussain ("Hussain"), Dkt. 13, and plaintiff moves for default as to defendant Ghazi NY Inc, only. In light of the voluntary dismissal of the claims against Hussain, this Report does not address the allegations against Hussain.

[2] Plaintiff failed to include page numbers in its motion papers. The page numbers herein refer to the ECF-stamped page numbers at the top of the page.

referral from the Honorable Kiyo A. Matsumoto, is plaintiff's motion for default judgment ("motion"). *See* Order Referring Motion (Aug. 24, 2021). For the reasons set forth below, this Court respectfully recommends granting plaintiff's motion.

I. **Relevant Factual and Procedural Background**

The following facts are drawn from plaintiff's Complaint and are accepted as true for purposes of this motion.

Plaintiff G&G is a commercial distributor and licensor of sporting programs. *See* Compl. ¶ 21. Under a license agreement with Golden Boy Promotions, LLC ("the License Agreement"), plaintiff obtained the exclusive nationwide commercial distribution (closed-circuit) rights to the Saul Alvarez v. Gennady Golovkin, IBF World Middleweight Championship Fight Program, including undercard or preliminary bouts (collectively referred to as "the Program"), telecast nationwide on Saturday, September 16, 2017 at commercial establishments such as theaters, arenas, bars, clubs, lounges, and restaurants throughout New York and other geographic locales. *See id.* ¶ 17; *see also id.* at ECF pages 12-19. Pursuant to the License Agreement, plaintiff entered into sublicensing agreements granting commercial establishments the rights to publicly exhibit the Program. *See id.* ¶ 18. Commercial establishments in New York could only exhibit the Program if authorized by plaintiff. *See id.* ¶ 19. Plaintiff marketed and distributed its closed-circuit rights and contracted with various establishments throughout New York to grant the right to broadcast the Program in exchange for a fee. *See id.* ¶ 20.

The transmission of the Program was electronically coded or "scrambled" and had to be decoded with electronic decoding equipment to receive the signal and telecast clearly. *See id.* ¶ 22. The Program originated via satellite uplink and was subsequently re-transmitted to cable systems and satellite companies via satellite signal. *See id.* ¶ 22. If a commercial establishment

was authorized by plaintiff to receive the Program, the establishment was provided with the electronic decoding equipment and the satellite coordinates necessary to receive the signal, or the establishment's satellite or cable provider was notified to unscramble the reception of the Program for the establishment.  *See id.* ¶ 23.

Defendant Ghazi NY Inc. owned and operated the commercial establishment doing business as Hookah on the Bay in Howard Beach, New York.  *See id.* ¶ 8.  On the night of the Program, Hookah on the Bay broadcast the Program on three screens with approximately 20 people in attendance, *id.* ¶ 24, and sold alcoholic and nonalcoholic beverages to patrons, *id.* ¶ 25.  The commercial fee for an establishment the size of Hookah on the Bay to broadcast the Program lawfully was $2,500.  *See id.* ¶ 26.  Hookah on the Bay did not pay this fee to plaintiff.  *See id.*

On September 11, 2020, plaintiff commenced this action alleging, *inter alia*, that defendant had unlawfully intercepted, received, and exhibited the Program in violation of 47 U.S.C. § 605(a) (Count I) and 47 U.S.C. § 553(a) (Count II).  *See id*. ¶¶ 27-43.  Defendant Ghazi NY Inc. was served on November 20, 2020.  Dkt. 5.  Defendant Ghazi NY Inc. has failed to answer the Complaint or otherwise appear in this case.  On April 27, 2021, the Clerk entered a Certificate of Default as to Ghazi NY Inc.  Dkt. 16.  On May 4, 2021, plaintiff moved for a default judgment.  Dkt. 17.

**II.     Discussion**

    **A.     Liability**

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend," plaintiff may apply to the court for a default judgment.  *See* Fed. R. Civ. P. 55(a), (b)(2). When evaluating a plaintiff's application for a default judgment, "a court is required to accept all [] factual allegations as true and draw all reasonable inferences in

3

[plaintiff's] favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). "Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Labarbera v. ASTC Labs., Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (internal quotation marks and citation omitted); *see TAGC Mgmt., LLC v. Lehman, Lee & Xu Ltd.*, 536 F. App'x 45, 46 (2d Cir. 2013) ("prior to entering default judgment, a district court is required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law." (internal quotation marks and citation omitted)).

### Federal Communications Act, Sections 605(a) and 553(a)

Plaintiff has alleged violations of the FCA under Sections 605(a) and 553(a). Compl. ¶¶ 1, 27-43. Section 605 "generally prohibits the unauthorized use or publication of wire or radio communications," *Int'l Cablevision, Inc. v. Sykes*, 997 F.2d 998, 1007 (2d Cir. 1993), while Section 553(a) "prohibits theft of services offered over a cable system," *J & J Sports Prods., Inc. v. Ferreiras*, No. 15-CV-6546, 2018 WL 6168557, at *9 (E.D.N.Y. Nov. 20, 2018).

"The term 'radio communication,' as used in [Section 605(a)], has long been understood to include satellite transmissions." *J & J Sports Prods., Inc. v. Nacipucha*, No. 17-CV-1186, 2018 WL 2709222, at *3 (E.D.N.Y. May 18, 2018), *report and recommendation adopted*, 2018 WL 2709200 (E.D.N.Y. June 5, 2018); *see also Garden City Boxing Club, Inc. v. Focused Enters., Ltd.*, No. 06-CV-4874, 2007 WL 1655647, at *2 (E.D.N.Y. June 6, 2007) ("Because [plaintiff] alleges that the Event was conveyed via satellite transmission, it has properly pleaded a claim under § 605(a)."). Thus, to make out a claim under Section 605(a), plaintiff must have transmitted the Program by satellite and defendant must have intercepted it without authorization.

Meanwhile, Section 553(a)(1) prohibits the unauthorized interception or receipt of "any communications service offered over a cable system." In short, "[w]hereas section 605 applies to the theft of a radio communication whether or not the radio communication is thereafter sent out over a cable network, section 553 applies to communication thefts from a cable network, whether or not the communication originated as a radio communication." *J & J Sports Prods., Inc. v. La Ruleta, Inc.*, No. 11-CV-4422, 2012 WL 3764062, at *2 (E.D.N.Y. Aug. 7, 2012).

"The same conduct by a defendant may violate both § 553(a)(1) and § 605(a). In such cases, damages should only be awarded pursuant to § 605(a)," which provides for a greater recovery.³ *Joe Hand Promotions, Inc. v. Bernal*, No. 18-CV-85, 2019 WL 885930, at *2 (E.D.N.Y. Feb. 22, 2019) (internal citations omitted); *see also Sykes*, 997 F.2d at 1009 ("the court should grant [plaintiff's] request for damages under § 605(e) instead of granting the lesser damages available under § 553"); *J & J Sports Prods., Inc. v. El Sonador Café Rest., Inc.*, No. 17-CV-3357, 2017 WL 6397731, at *2 (E.D.N.Y. Dec. 14, 2017) ("Plaintiff is entitled to damages under Section 605, so the Court need not address Plaintiff's other claims [under Section

---

³ Sections 553 and 605 set forth similar remedial schemes, but differ in "(1) the range of statutory damages available to an aggrieved party, and (2) the respective provisions for attorneys' fees." *Garden City Boxing Club, Inc. v. Polanco*, No. 05-CV-3411, 2006 WL 305458, at *4 (S.D.N.Y. Feb. 7, 2006). Under both sections, the aggrieved party may elect to recover either actual damages and any profits that are attributable to the violation or statutory damages. *See* 47 U.S.C. §§ 553(c)(3)(A), 605(e)(3)(C)(i). While section 553 provides statutory damages "in a sum of not less than *$250* or more than $10,000," *id.* § 553(c)(3)(A)(ii) (emphasis added), section 605 provides statutory damages "in a sum of not less than *$1,000* or more than $10,000," *id.* § 605(e)(3)(C)(i)(II) (emphasis added). Furthermore, while section 553 allows for additional damages in "an amount of not more than *$50,000*" for violations "committed willfully and for purposes of commercial advantage or private financial gain," *id.* § 553(c)(3)(B) (emphasis added), section 605 permits additional damages in "an amount of not more than *$100,000*" in cases in which the violation "was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain," *id.* § 605(e)(3)(C)(ii) (emphasis added). With respect to attorneys' fees and costs, a court "may" direct recovery to an aggrieved party who prevails under section 553, *id.* § 553(c)(2)(C), whereas a court "shall" direct recovery in the same situation under section 605, *id.* § 605(e)(3)(B)(iii).

5

553]"); *Kingvision Pay-Per-View, Ltd. v. Castillo Rest. Corp.*, No. 06-CV-00617, 2007 WL 841804, at *3 (E.D.N.Y. Jan. 16, 2007) ("It is well-settled in the Second Circuit that a plaintiff cannot recover damages under both sections 553(a) and 605(a), and that when a defendant is liable under both sections the court should award damages pursuant to 47 U.S.C. § 605 because it provides for greater recovery.").

Here, plaintiff alleges that defendant intercepted its signal, which "originated via satellite uplink and was subsequently re-transmitted to cable systems and satellite companies via satellite signal." Compl. ¶ 22. Defendant then displayed the Program on three screens in a commercial setting without plaintiff's permission. *See id.* ¶¶ 24-26; Plaintiff's Affidavit ("Pl.'s Aff.") at ¶ 7, Dkt. 17-2; Affidavit of Michael Osgood ("Investigator's Aff."), Dkt. 17-3 at ECF pages 38-39. Though plaintiff seems to be unsure of the exact method defendant used to intercept the broadcast, *see* Pl.'s Aff. ¶¶ 9-10, "all that needs to be alleged (to state a § 605 claim) is that the communication *originated* via satellite." *Ferreiras*, 2018 WL 6168557, at *7 (emphasis in original); *see Bernal*, 2019 WL 885930, at *3 ("[A]ny one of the various technologies by which [plaintiff's] satellite broadcast could have been intercepted is sufficient to establish liability.").[4] As plaintiff has alleged that its signal for the Program originated via satellite, this Court recommends finding that plaintiff has stated a claim under Section 605(a) and 553(a)(1), and holding defendant Ghazi NY Inc. liable for the damages recommended below. *See G&G Closed Cir. Events, LLC v. Sanchez Torres*, No. 20-CV-3487, 2021 WL 101200, at *2 (S.D.N.Y. Jan.

---

[4] In contrast, a handful of *J & J Sports Production* cases have failed to state a claim under Section 605(a) because they do not specify the method through which the *plaintiff* transmitted the material as opposed to identifying how the defendant intercepted the material. *See Ferreiras*, 2018 WL 6168557, at *6 (refusing to grant liability under 605(a) where the "Complaint never allege[d] that the Event was transmitted over satellite or that it was a satellite communication").

6

11, 2021) ("Where, as here, the intercepted program is transmitted via cable and satellite, sections 553 and 605 both apply.").

**B.     Remedies**

**1.     Damages**

Unlike those concerning liability, allegations relating to damages are not deemed admitted upon default. *See Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. & Training Fund & Other Funds v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (citing *Greyhound Exhibitgroup v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)).  Rather, damages must generally be established in an evidentiary proceeding at which the defendant is afforded the opportunity to contest the amount claimed. *See Greyhound Exhibitgroup*, 973 F.2d at 158.  However, "these steps are not necessary as long as [the Court] ensure[s] that there was a basis for the damages specified in the default judgment." *Joe Hand Promotions, Inc. v. Levin*, No. 18-CV-9389, 2019 WL 3050852, at *3 (S.D.N.Y. July 12, 2019) (alterations in original) (internal quotation marks and citation omitted).  A court may make this determination upon a review of detailed affidavits and documentary evidence.  *See Fustok v. ContiCommodity Servs., Inc.,* 873 F.2d 38, 40 (2d Cir. 1989).

Section 605 provides that a plaintiff may recover statutory damages "of not less than $1,000 or more than $10,000 . . . for each violation."  47 U.S.C. § 605(e)(3)(C)(i)(II).  In addition to statutory damages, a plaintiff may recover enhanced damages in "an amount of not more than $100,000 for each violation" where "the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." *Id*. § 605(e)(3)(C)(ii).  "Courts have interpreted the showing of an event on a single night as one violation for the purposes of statutory and enhanced damages." *Bernal*, 2019 WL 885930, at *3

7

(quotation marks omitted) (quoting *El Sonador*, 2017 WL 6397731, at *3). Here, plaintiff requests $7,500 in statutory damages and $22,500 in enhanced damages, or three times the requested statutory damages, for a single violation. *See* Pl.'s Mem. at ECF page 5.

### a. Statutory Damages

To determine statutory damages, Courts typically calculate the flat-fee rate and the per-person rate and then award the greater of the two. *See J & J Sports Prods., Inc. v. Hot Shotz Sports Bar Inc.*, No. 17-CV-4170, 2018 WL 5020175, at *7 (E.D.N.Y. July 13, 2018) (collecting cases). The flat-fee rate is "the amount that the establishment would have paid to license the event and broadcast it legally." *Bernal*, 2019 WL 885930, at *4 (*citing J & J Sports Prods., Inc., v. GPN Bar, Inc.*, No. 15-CV-6504, 2016 WL 8139019, at *5 (E.D.N.Y. Dec. 15, 2016), *report and recommendation adopted*, 2017 WL 435785 (E.D.N.Y. Feb. 1, 2017)). To calculate the per-person amount, the court "multiplies the number of patrons in the establishment by the fee that an average customer would pay to view the fight at home on a pay-per-view channel." *Id*.

Here, plaintiff does not include the residential fee in its submissions, preventing the Court from calculating the per-person amount, *see id.*, but has submitted an exhibit showing the rates charged to commercial customers to broadcast the event legally. *See* Compl. at ECF page 25, Dkt. 1 ("Rate Card"); Declaration of Plaintiff's Counsel, Dkt. 17-3 at ECF page 31; *see also* Pl.'s Aff. ¶ 8, Dkt. 17-2. The Rate Card indicates that the license to lawfully display the Program to the 20 patrons observed watching the Program at Hookah on the Bay would have cost defendant $2,500. *See* Rate Card; Compl. ¶¶ 24, 26; Investigator's Aff., Dkt. 17-3 at ECF page 39. Thus, plaintiff's request for $7,500 in statutory damages amounts to three times what defendant would have paid as a licensing fee.

8

Plaintiff attempts to justify its request by arguing that (1) the flat-fee rate undervalues the Program, fails to compensate plaintiff adequately, and conflates the two separate statutory sections providing for the choice between actual damages and statutory damages; and (2) the per-person rate would understate the seriousness of defendant's conduct. *See* Pl.'s Mem. at ECF pages 6-7. There is no authority in this Circuit, however, supporting plaintiff's request to treble the base statutory award; courts in this Circuit typically award a multiple of the base award under Section 605 only when awarding enhanced damages. *See, e.g., Hot Shotz*, 2018 WL 5020175, at *8-*9. Plaintiff acknowledges as much in its memorandum of law. *See* Pl.'s Mem. at ECF pages 8. Moreover, the very justifications plaintiff puts forth in support of trebling the statutory damages are the same justifications courts use to justify awards of enhanced damages. *See Joe Hand Promotions, Inc. v. Kings Point Rest., Inc.*, No. 17-CV-01870, 2017 WL 6611705, at *6 (E.D.N.Y. Nov. 3, 2017) (noting in determining enhanced damages that awarding statutory damages alone "would understate the seriousness of defendants' conduct, particularly since, as plaintiff contends, plaintiff has suffered intangible losses in the form of 'business investment, business opportunities, reputation, and goodwill.'").

Although the Court enjoys discretion to award a flat-fee rate different from the amount of the licensing fee, it is not persuaded at this time to do so and to depart from the established approaches. *See, e.g.*, *G&G Closed Cir. Events, LLC v. Pacheco*, No. 20-CV-7457, 2021 WL 4296649, at *3 (S.D.N.Y. Sept. 20, 2021) (awarding statutory damages equal to the licensing fee); *Sanchez Torres*, 2021 WL 101200, at *3 (same); *G&G Closed Cir. Events, LLC v. Batista*, No. 20-CV-5073, 2021 WL 293150, at *2 (S.D.N.Y. Jan. 28, 2021) (same); *G&G Closed Cir. Events, LLC v. Vasquez*, No. 20-CV-2030, 2020 WL 8167387, at *3 (E.D.N.Y. Dec. 27, 2020),

9

*report and recommendation adopted*, 2021 WL 135721 (E.D.N.Y. Jan. 14, 2021) (same). This Court therefore respectfully recommends awarding plaintiff $2,500 in statutory damages.

### b.     Enhanced Damages

Plaintiff also is entitled to enhanced damages given defendant's willful violation of the statute. Willfulness is generally "presumed in cases arising under § 605 where the defendant defaults." *Bernal*, 2019 WL 885930, at *5; *see also Time Warner Cable of N.Y.C. v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) ("Signals do not descramble spontaneously nor do television sets connect themselves to cable distribution systems."). In calculating enhanced damages, "[c]ourts in this Circuit typically award [] a multiple of the statutory damages award." *Hot Shotz*, 2018 WL 5020175, at *9 (collecting cases). A court's decision to award an amount equal to, double, or triple the statutory damages depends on the presence of factors such as "whether there is evidence of (i) repeated violations; (ii) significant actual damages suffered by the plaintiff; (iii) substantial unlawful monetary gains by defendant; (iv) defendant's advertising of the event; and (v) defendant's collection of a cover charge or premiums for food and drinks." *Id.*; *see also Traffic Sports USA v. La Camisa Negra Rest. & Bar Corp.*, No. 11-CV-1475, 2012 WL 3064129, at *5 (E.D.N.Y. May 23, 2012) (collecting cases), *report and recommendation adopted*, 2012 WL 3065523 (E.D.N.Y. July 27, 2012).

The presence of at least one of these factors can support an award in an amount three times the statutory damages award, particularly when defendant's unlawful activity attracts a large group of patrons. *See J & J Sports Prods., Inc. v. AAA Blue Iguana Bar Lounge, Inc.*, No. 13-CV-02738, 2014 WL 4536741, at *5-*6 (E.D.N.Y. Sept. 10, 2014) (awarding enhanced damages of $6,600, three times the statutory damages recommended, in case where 25 patrons were observed and "Plaintiff's submissions and defendants' default suffice to support the

10

inference that defendants displayed the boxing match for commercial gain in order to attract customers to patronize their establishment").

Here, plaintiff alleges that Hookah on the Bay broadcasted the Program on three screens with approximately 20 patrons in attendance, and that Hookah on the Bay sold alcoholic and non-alcoholic beverages to its patrons during the Program. *See* Compl. ¶¶ 24-25; Investigator's Aff. The Complaint also alleges that the Program resulted in increased profits or financial benefit to Hookah on the Bay. *See* Compl. ¶ 14. Accordingly, this Court respectfully recommends awarding plaintiff enhanced damages of $7,500, an amount three times the statutory award.[5]

## 2. Interest, Attorney's Fees and Costs

Plaintiff requests 30 days from the date of judgment to submit its motion for interest, costs, and attorney's fees. *See* Pl.'s App. for Default Judgment by the Court at ECF page 3, Dkt. 17; Default Judgment (Proposed), Dkt. 17-3 at ECF page 34. This Court respectfully recommends granting plaintiff's request. *See Pacheco*, 2021 WL 4296649, at *4 (granting same); *J & J Sports Prods., Inc. v. Boyd et al.*, No. 17-CV-6822, 2019 WL 316704, at *1 (E.D.N.Y. Jan. 24, 2019) (same).

## Conclusion

For the reasons stated herein, this Court respectfully recommends that plaintiff's motion for default judgment, Dkt. 17, be granted and that the District Court enter default judgment against defendant Ghazi NY Inc., in the total amount of $10,000, comprised of $2,500 in

---

[5] This award of enhanced statutory damages helps address the concerns about deterrence that plaintiff raises with respect to the award of statutory damages. *See Googies Luncheonette*, 77 F. Supp. 2d at 491 ("A factor of three times the base award should serve as a reasonable deterrent against future violations.").

11

statutory damages and $7,500 in enhanced damages.  It is further recommended that plaintiff be afforded 30 days from the date of judgment herein to submit its motion for interest, attorney's fees and costs.

A copy of this Report and Recommendation is being electronically served on counsel.  Further, the Court directs plaintiff's counsel to serve a copy of this Report and Recommendation by overnight mail and first-class mail to defendant at its last known address and to file proof of service on ECF by **October 18, 2021**.  Any objections to the recommendations made in this Report must be filed with the Honorable Kiyo A. Matsumoto within 14 days after the filing of this Report and Recommendation and, in any event, on or before **October 27, 2021**.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  Failure to file timely objections may waive the right to appeal the District Court's order.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*) (discussing waiver under the former ten-day limit).

The Clerk is requested to enter this Report and Recommendation into the ECF system.

**SO ORDERED**

Dated: Brooklyn, New York
       October 13, 2021

                                        s/ James R. Cho
                                        James R. Cho
                                        United States Magistrate Judge